PEARL COBY, Appellant, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Respondent.

Kansas City Court of Appeals, November 17, 1913.

1. NEGLIGENCE: Humanitarian Rule: Railroad Crossings. The plaintiff sued to recover damages for personal injuries sustained in a collision between the automobile in which he was riding and the defendant's railroad train at a crossing on Franklin street near the defendant's station in Kirksville. When he approached the crossing the driver of the automobile was going at the rate of four or five miles per hour and he failed to observe any train coming until he was within ten or twelve feet from the main track. The train was then about sixty feet away traveling at the rate of twenty miles per hour. It struck the automobile and plaintiff was injured. *Held*, that the plaintiff was not entitled to recover under the humanitarian doctrine.

2: ——: ——: ——. In order for the humanitarian doctrine to be applicable the traveler must not only be in actual peril but his peril must be apparent to one in the position of the operator of the threatening instrumentality while in the exercise of ordinary care and diligence.

Appeal from Adair Circuit Court.—*Hon. Nat M. Shelton,* Judge.

AFFIRMED.

*C. E. Murrell* and *Alex Doneghy* for appellant.

*J. G. Trimble* and *Campbell & Ellison* for respondent.

JOHNSON, J.—Plaintiff was injured in a collision between an automobile, in which he was riding as a guest, and a train running on defendant's railroad. The place of the collision was where the railroad crosses Franklin street in the city of Kirksville. This street runs north and south, and is much traveled. Defendant's passenger station is just west of the street and is on the south side of the main railroad track. Three switch tracks diverge from the main track at a point about one hundred and fifty feet east of the street and run westward across and beyond it. The first of these tracks is about thirty feet south of the main track and the last about thirty feet further south. The railroad runs over a long trestle bridge the west end of which is from 350 to 400 feet east of Franklin street. A westbound train, consisting of a locomotive, nine freight cars and two passenger coaches, struck the automobile which was running north on Franklin street and plaintiff who was riding in the seat with the driver was thrown out and severely injured. For some reason plaintiff did not offer himself as a witness and we must look to the testimony of the driver for the principal facts on which he relies for a recovery.

The petition charges that the injury was caused by negligence of defendant in failing to give statutory signals as the train approached the crossing, in failing to provide the locomotive with a proper headlight, in running the train in excess of seven miles per hour, the maximum speed allowed by a city ordinance, and that the injury was caused by a negligent breach of the duty defendant owed plaintiff under the humanitarian or "last chance" rule. The answer contains a general denial and the allegation that plaintiff was a minor at the time of the commencement of this suit and, therefore, was not competent to maintain the action. At the conclusion of the evidence introduced by plaintiff, defendant asked a peremptory instruction which was refused. Defendant offered no evidence, the case was submitted to the jury on the evidence of plaintiff and the jury returned a verdict for defendant. Plaintiff appealed and complains of the instructions given at the request of defendant as being equivalent to a demurrer to the evidence. The answer of counsel for defendant is that the evidence of plaintiff failed to make a case to go to the jury and that its request for a demurrer to the evidence should not have been overruled for the reason that plaintiff is shown to have been guilty in law of negligence that contributed to his injury.

Plaintiff, a young negro of no particular vocation, was invited by the driver of an automobile, a liveryman, to accompany him on a trip to a near-by town. The invitation was prompted partly by the selfish motive of having a willing and able helper should tire or other troubles be encountered on the trip. They left the public square at 9:40 in the evening and drove north on Franklin street to the crossing in question which is seven blocks from the public square. They knew the westbound train was overdue and might arrive at any moment. Hacks, express wagons and other vehicles were standing at the station just west of the street

waiting for the arrival of the train. As it approached the crossing the speed of the car was reduced to four or five miles per hour and without stopping it proceeded over the crossing at that speed. Houses and other obstacles on the east side of the street shut off their vision in that direction until they came to a point ten or fifteen feet south of the south switch track and about seventy feet south of the main track on which the train approached. There was a break in the obstructions at that point for a distance of fifteen feet or more that afforded a clear view of the track for a distance estimated by Carothers, the driver, as being 700 or 800 feet east of Franklin street and about 100 feet east of the long trestle bridge. The driver states he looked eastward while traveling by that open space and listened but saw and heard nothing of the train. Then his view was shut off by two freight cars standing on the first switch track, a telephone pole and a pile of lumber, and he could not see eastward until he reached a point ten or twelve feet south of the main track. Then he saw the locomotive about sixty feet away advancing at a speed of twenty miles per hour. The front end of his car at that moment was from four to six feet from the track and as the car could not be stopped in a place of safety, the driver swerved to the left in the hope of being able to avoid the oncoming engine. The movement was unsuccessful and the collision followed. During all this time plaintiff sat in the front seat without making an effort to escape though there was no door or other obstacle to prevent him from stepping to the street and the speed of the car would not have been a serious hindrance to such attempt. The locomotive carried a headlight but the driver and another witness say that it was dim and cast no glare along the track. There is some evidence to the effect that aside from giving the station whistle the engine gave no signal by bell or whistle of its approach. A witness who lived southeast of the cross-

ing and about five blocks from the railroad testified that she plainly saw and heard the train, did not see a headlight and heard no bell. We quote from her testimony:

"Q. What part of the train did you see? A. Well, I saw all of it, where the headlight ought to be, but I didn't see no light there.

"Q. You could see the engine? A. I could and the coal car and all of the freight and passenger, too.

"Q. Was that a very dark night? A. It wasn't so very dark I didn't think.

"Q. It was light enough that four blocks you could see and did see the engine? A. I sure did.

"Q. Did you hear it running? A. I heard it running before I knowed it was coming; I didn't hear any whistle or bell.

"Q. You could hear it running before you saw it? A. Yes, sir.

"Q. How far away were you from the train at the time you heard it running? A. I suppose about five blocks.

"Q. You heard it for about a block before it came in your sight? A. Yes, sir.

"Q. Did you hear it when it ran over that trestle just east of Franklin street crossing? A. I heard it till it got to town."

The night was an ordinary summer night unmarked by any unusual weather conditions. The train was about five hundred feet long. There is no direct evidence that it ran faster than twenty miles per hour within the distance of 700 or 800 feet from Franklin street. The engineer may have begun to slacken speed preparatory to stopping at the station and we shall concede for argument, though there is no evidence of the fact, that the train was running faster than twenty miles per hour at the time the automobile passed the open space near the south switch track. But had it been running at thirty miles per hour, which is as

fast as one would think a mixed train would be running under all the circumstances disclosed, the loco- motive could not have been more than 400 feet from the crossing and it and nearly all of the train were within the range of vision afforded the occupants of the automobile by the open space and certainly within their hearing. It will not do for plaintiff to contend that the train was not within sight and hearing. The indisputable facts show that it was and we are not bound to accord any weight to testimony that is op- posed by evidence so conclusive.

There were other lights in the engine and train besides the headlight and the occupants of the car oc- cupied a position as advantageous as that of plain- tiff's witness who saw the train at a much greater dis- tance and who heard it before it came into sight. This heavy freight train, rumbling over a trestle and only four hundred feet away, made a noise that could not have escaped the hearing of an attentive person in the position of plaintiff. We shall assume that both occupants of the car saw it and heard it when they were sixty or seventy feet from the main track and in a place of safety. It is true, as argued by counsel for plaintiff, that a traveler approaching a railway crossing in a city has a right to presume that a train will not be run to and over the crossing at speed in excess of that allowed by the city ordinances, but it does not follow that the occupants of the automobile were justified in shutting their eyes and ears after dis- covering that the train was approaching and in blindly assuming that it would not be run faster than seven miles per hour and at such speed would give them ample time to cross in safety. The duty of a traveler about to cross a railway to use his senses for his own protection is a continuing duty. To be reasonably careful he must be attentive until he has passed through the zone of danger. Presumptions must give way to actual facts and knowing, as they did, that a

train was coming, was near the crossing and, obviously, running at an excessive rate of speed—for its appearance and noise proclaimed that fact—the occupants of the automobile indisputably appear to have proceeded to the crossing in a manner clearly negligent. They neither stopped nor checked speed but after passing the open space ran on behind obstructions to sight and sound into the very teeth of danger, blindly relying on the chance that they would beat the train to the crossing. Their negligence is so apparent that we must declare as a matter of law that plaintiff, who was in a position to avoid the injury, even if the driver had refused to stop at his request, was as negligent as the driver and that his negligence must defeat his action, unless the evidence discloses that defendant was guilty of a breach of a duty it owed plaintiff under the humanitarian rule. Obviously the peril of plaintiff did not and could not have become known to the enginemen until the automobile emerged from behind the pile of lumber and nothing then could have been done by them to avert a collision.

The weakness of plaintiff's position under the last chance rule has led counsel to urge that the strong light cast ahead by the automobile must have been visible to the engineer at a distance that would have enabled him to prevent a collision. Considering the fact that the engineer had other lights before him, the headlight of his locomotive, street lamps and lights in and about the station, it would be speculative in the extreme to say that he could have distinguished the light from the automobile. But if he could have done so it would be absurd to hold that he should have anticipated that the light emanated from a vehicle that was on the point of being negligently run from a place of safety in front of the train. Cabs, wagons, motor cars and other vehicles brought to the station to meet trains generally came from the south on Franklin street almost to the crossing and were there turned in or

backed into the station. A vehicle light thrown across the track suggested nothing more than the approach of the vehicle from the south and carried no warning or intimation that its driver was in any sort of peril. To bring the last chance rule into play the traveler must not only be in actual peril but his peril must be apparent to one in the position of the operator of the threatening instrumentality while in the exercise of ordinary care and diligence.

We hold that the injury was the result, in part, at least, of plaintiff's own negligence and that the evidence affords no ground for the application of the humanitarian doctrine.

The learned trial judge would have been justified in sustaining the demurrer to the evidence and in this view of the case the errors assigned by plaintiff are immaterial.

The judgment is affirmed. All concur.